# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **HAROLD MARCUS FERGUSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:10-0936** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

Plaintiff, *pro se*, filed an eight page document which the Court will construe as a Motion for

Judgment on the Administrative Record. Docket No. 26. Defendant filed a "Motion for Entry of

Judgment Under Sentence Four, 42 U.S.C. § 405(g), With Remand to Defendant" and supporting

Memorandum of Law, arguing that this case should be remanded for a new hearing so that a

supplemental decision may be provided upon further consideration of issues regarding Plaintiff's

alleged disability. Docket Nos. 31, 32. Plaintiff then filed a "Request for Denial of Defendants

[sic] Request to Have Case Remanded Back to Defendant," which the Court will construe as a

Response to Defendant's cross-motion. Docket No. 33. Defendant filed a Reply to Plaintiff's

Response. Docket No. 34. Plaintiff then filed "Plaintiff's Response to Defendant's Response to Plaintiff's Request to Deny Case Being Remanded to Defendant." Docket No. 35.

For the reasons stated below, the undersigned recommends that this action be REMANDED.

## I. INTRODUCTION

Plaintiff filed a previous application for DIB on June 20, 2000, alleging that he had been disabled since April 6, 1999, due to degenerative disc disease, and numbness and pain in his right leg. Docket No. 22, Attachment ("TR"), TR 102, 122. Plaintiff's application was denied both initially (TR 78) and upon reconsideration (TR 79). Plaintiff subsequently requested (TR 89) and received (TR 71-75) a hearing. Plaintiff's hearing was conducted on March 7, 2002, by Administrative Law Judge ("ALJ") Mack H. Cherry. TR 660, 666. Plaintiff, his wife, and vocational expert ("VE"), Jane Brenton, appeared and testified.[1] TR 660.

On October 29, 2002, ALJ Cherry issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 666. Specifically, ALJ Cherry made the following findings of fact:

1.   The claimant worked after April 6, 1999, with the evidence suggesting that he may have engaged in substantial gainful activity after the alleged onset date of disability. 20 CFR 404.1520(b).

2.   The evidence establishes that the claimant has a severe impairment, degenerative disc disease, but that he does not have any impairment or combination of impairments of the level of severity required by 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] A transcript of the 2002 hearing is not contained in the record.

3. The evidence establishes that the claimant has not experienced any pain or other symptomology of a disabling level of severity on an ongoing basis.

4. The claimant retains the capacity to perform light work, with lifting of up to 20 pounds, which allows for alternate sitting and standing.

5. The claimant cannot perform his past relevant work as a computer technician or field service equipment repairman.

6. Based on exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 of Regulations No. 4 and Rule 202.22, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

7. Although the claimant's limitations prevent him from performing the full range of light work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in national economy which he could be expected to perform. Examples of such jobs are: computer programmer, computer operator, electronics accessory assembler, credit card inspector, appointment clerk, counter clerk, general office clerk, and cashier. The vocational expert testified that there are over two and a half million of such jobs in existence in the national economy; a significant number of jobs.

8. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. 20 CFR 404.1520(f).

TR 665-66.

On December 5, 2002, Plaintiff timely filed a request for review of the hearing decision.

TR 66. On August 22, 2003, the Appeals Council issued a letter declining to review the case

(TR 60-62), thereby rendering the decision of the ALJ the final decision of the Commissioner.

Plaintiff filed his second application for DIB on December 9, 2003, and protectively filed

his first application for SSI on November 12, 2003,[2] alleging that he had been disabled since

April 6, 1999[3], due to degenerative disc disease, neuropathy, Bell's palsy, poor vision, and

depression.  TR 263, 291, 302.  Plaintiff's applications were denied both initially (TR 262, 264)

and upon reconsideration (TR 265, 266).  Plaintiff subsequently requested (TR 58) and received

(TR 819-40) a hearing.  Plaintiff's hearing was conducted on January 22, 2007, by ALJ Carmen

Graves.  TR 819.  Plaintiff and VE, Dr. Gary K. Sturgill, appeared and testified.  TR 819-20.

On March 5, 2007, ALJ Graves issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR

681.  Specifically, ALJ Graves made the following findings of fact:

> 1.  The claimant met the insured status requirements of the
>     Social Security Act through December 31, 2003.
>
> 2.  The claimant has not engaged in substantial gainful activity
>     since October 29, 2002, the amended onset date of
>     disability (20 CFR 404.1520(b), 404.1571 *et seq.*,
>     416.920(b) and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairment:
>     degenerative disc disease (20 CFR 404.1520(c) and
>     416.920(c)).
>
> 4.  The claimant does not have an impairment or combination
>     of impairments that meets or medically equals one of the
>     listed impairments in 20 CFR Part 404, Subpart P,
>     Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
>     416.920(d), 416.925 and 416.926).

---

[2]The undersigned was unable to find Plaintiff's application for SSI in the record.  As Plaintiff's application for SSI is not at issue in the case at bar, the undersigned accepts the information regarding this application provided in ALJ Roberts's decision.  TR 670.

[3]At Plaintiff's hearing on his second set of applications, Plaintiff amended his alleged onset date of disability to October 30, 2002.  TR 861-62, 864-65.

5.       Based on Acquiescence Rulings 98-3(6) and 98-4(6), the prior decision issued on October 29, 2002, and the evidence in the current record, the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of about 6 hours in an 8 hour workday; sit for a total of about 6 hours in an 8 hour workday; unlimited ability to push, pull climb, balance, stop, kneel, crouch, crawl, reach.

6.       The claimant is capable of performing past relevant work as a computer support supervisor, computer systems hardware analyst, and a computer support analyst.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.       The claimant has not been under a disability, as defined in the Social Security Act, from October 29, 2002, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 673-81.

On May 1, 2007, Plaintiff timely filed a request for review of the hearing decision.  TR 686.  On September 28, 2007, the Appeals Council issued an Order remanding the case to a different ALJ for a second hearing on Plaintiff's 2003 applications.  TR 682, 683-85.  Plaintiff's new hearing was conducted on November 6, 2008, by Administrative Law Judge ("ALJ") Linda Gail Roberts.  TR 841.  Plaintiff and VE, Rebecca G. Williams, appeared and testified.  TR 841-42.

On December 24, 2008, ALJ Roberts issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 34.  Specifically, ALJ Roberts made the following findings of fact:

1.       The claimant met the insured status requirements of the Social Security Act through December 31, 2003.

2.      The claimant has not engaged in substantial gainful activity since October 30, 2002, the amended alleged onset date of disability (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: spondyloarthropathy/disc disease (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) which includes the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of about 6 hours in an 8 hour workday; sit for a total of about 6 hours in an 8 hour workday; unlimited ability to push/pull, climb, balance, stoop, kneel, crouch, crawl, reach. The claimant is able to understand, remember, and carry out short and simple instructions as well as complex instructions; is able to maintain attention, concentration, and persistence for extended periods; and can interact in a socially appropriate manner with supervisors and coworkers.

6.      The claimant is capable of performing past relevant work as an office machine servicer and parts cataloger. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2002, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 27-34.

On February 23, 2009, Plaintiff timely filed a request for review of the hearing decision.

TR 19. On July 30, 2010, the Appeals Council issued a letter declining to review the case (TR 11-14), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The ALJs have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial
> gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which
> significantly limits his or her ability to work (a "severe"
> impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it
> must be determined whether he or she suffers from one of the
> "listed" impairments[4] or its equivalent.  If a listing is met or
> equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level
> impairments, it must be determined whether the claimant can
> return to the job he or she previously held in light of his or her
> residual functional capacity (e.g., what the claimant can still do
> despite his or her limitations).  By showing a medical condition
> that prevents him or her from returning to such past relevant work,
> the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability,
> the burden shifts to the Commissioner to establish the claimant's
> ability to work by proving the existence of a significant number of
> jobs in the national economy which the claimant could perform,
> given his or her age, experience, education, and residual functional
> capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175,

1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

---

[4]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Statement Of Errors

Plaintiff contends that the ALJ's decision should be reversed with an immediate award of benefits because the ALJ erred in: (1) her evaluation of Plaintiff's alleged drug dependency; (2) her evaluation of Plaintiff's bowel issues; (3) rejecting the opinion of Plaintiff's treating physician; and (4) her evaluation of Plaintiff's ability to perform past work.  Docket No. 26.

Defendant argues that reversal with an immediate award of benefits is not an appropriate resolution of this case.  Docket No. 34.  Rather, Defendant argues that remand is appropriate because "there are three separate issues in this case that warrant remand for further administrative development; without further development, this court will not be adequately equipped to determine whether the current ALJ's decision is supported by substantial evidence."

*Id.* Specifically, Defendant contends that ALJ Roberts failed to: (1) follow Acquiescence Ruling ("AR") 98-4(6) in determining Plaintiff's residual functional capacity; (2) follow AR 98-3(6) in assessing Plaintiff's past relevant work; and (3) evaluate the severity of Plaintiff's somatoform disorder according to the "the special technique" provided in the Regulations for mental impairments.[5] *Id.*

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

With regard to the standard for the appropriateness of an immediate award of benefits versus remand: "In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th

---

[5]Defendant's argument regarding remand for consideration of Plaintiff's possible somatoform disorder will not be discussed herein, because Plaintiff, in his "Request for Denial of Defendants [*sic*] Request to Have Case Remanded Back to Defendant" argues that "the somatoform disorder has been removed from consideration as my possible problem." Docket No. 33. Because Plaintiff no longer alleges disability based upon somatoform disorder, remand on that issue is not warranted.

Cir. 1994).

As will be discussed below, although Plaintiff seeks to have this Court reverse the ALJ's decision and immediately award him benefits, reversal with an immediate award of benefits is not warranted. Rather, remand is the proper course of action in this case. As the record and the three unfavorable decisions reflect, the evidence in this case is conflicting, and proof of Plaintiff's disability is not "overwhelming." As is discussed first in Plaintiff's statements of error analyzed below, and then in Defendant's arguments for remand, essential factual issues remain to be resolved and need further development before determining whether Plaintiff is disabled as defined under the Regulations.

## 1. ALJ's EVALUATION OF PLAINTIFF'S ALLEGED DRUG DEPENDENCY

The ALJ, in her decision, asserted, "The medical evidence of record contains statements from several doctors that the claimant was dependent on prescribed narcotic medication."[6] TR 32. The ALJ additionally noted that Plaintiff "refused any treatment and medications other than morphine," and that, "It appears that whenever a doctor refused to continue to prescribe narcotics, the claimant switched to another physician until he eventually found one willing to provide narcotic medications on a regular basis although it was noted that there were no objective signs and no radiological data to support the level of pain alleged." *Id.*

Plaintiff argues that the ALJ's assertion that he was "dependent on prescribed narcotic medication" was not supported by substantial evidence because the exhibits referenced by the ALJ (4F, 12F, 13F, 14F, 16F) do not show that Plaintiff's physicians considered him to be

---

[6]Specifically, the ALJ stated, "Dr. Clinton as well as other physicians at the Veterans Administrative Medical Center noted that claimant was narcotic dependent (Exhibits 4F, 12F, 13F, 14F, 16F)." TR 32.

"narcotic dependent." Docket No. 26. Regarding his alleged "doctor-shopping," Plaintiff contends, "I changed doctors when it is apparent that they are not on the right track or there were personality conflicts . . . ." *Id.*

In the Appeals Council's decision remanding the case, the ALJ was instructed to "[i]f necessary, conduct further proceedings required to determine whether drug addiction is a contributing factor material to the finding of disability." TR 684 (citations omitted). After her discussion of Plaintiff's alleged dependence on prescribed narcotic medication, the ALJ ultimately found that, "this dependence is not an issue material to a finding of disability." TR 32. Because the ALJ considered the issue of Plaintiff's alleged drug dependence to not be an issue material to a finding of disability, and Plaintiff essentially argues the same, the ALJ's consideration of the evidence regarding whether Plaintiff was actually drug dependent is not grounds for reversal or remand.

## 2. ALJ's EVALUATION OF PLAINTIFF'S BOWEL ISSUES

Plaintiff states:

> Another cause of my pain is my bowel movements. Anytime my bowels move it's [*sic*] content around, it can cause pain in my lower back and this usually radiates down my legs. It seems the stools are pressing on the nerves in my lower back and causing the pain that doctors are generally looking for when pressing around on my back. . . . The pain is so intense sometimes I throw up from it. This combined with my other problems add to my disability problems. After a bowel movement I either have to go to my recliner or my bed, there is no way I can stay up and about after an event. Plus there is no predicting one, it comes when it is ready.

Docket No. 26.

The ALJ, in her decision, noted that Plaintiff's "[c]onstipation as the result of opoid [sic] use was relieved with laxatives and stool softeners." TR 32 (internal citations omitted).

Plaintiff argues that medication does help his constipation, but that it is not completely effective in treating or alleviating this impairment. Docket No. 26. Plaintiff proffers subjective complaints of pain associated with his constipation and a self-diagnosis to contradict the ALJ's statement that laxatives and stool softeners relieve Plaintiff's constipation. *Id.*

The ALJ observed that, "The evidence demonstrates that the claimant received a good result from medications when taken as prescribed on a consistent basis." TR 32. Relatedly, the ALJ noted that, "The record does not show that there are any side effects from prescribed medication that caused significant limitations of function that lasted for a period of 12 continuous months." *Id.* As support for this observation, the ALJ noted that Plaintiff's constipation, a side effect of prescribed narcotics, was relieved with additional supplements such as laxatives and stool softeners. *Id.*

As can be seen, the ALJ did not conclude that Plaintiff's bowel issues were completely controlled; rather, she indicated that Plaintiff's constipation was a side effect of prescribed medication that was alleviated enough through laxatives and stool softeners, such that Plaintiff's constipation did not significantly undermine the pain relief he received from his prescribed medications. As support for her assertion, the ALJ cited Exhibit 16 F, medical records from the Veterans Affairs Medical Center. TR 32, 745, 749-50, 779, 782, 790, 802, 809.

Moreover, Plaintiff offers no medical evidence to support his contention that his bowel issues are not under control, or that they are severe enough to be disabling as defined by the Act. *See* Docket No. 26. Absent such evidence, the ALJ properly considered Plaintiff's VA records and determined that Plaintiff's bowel issues were well-treated with laxatives and stool softeners.

**3.  ALJ's EVALUATION OF THE OPINION EVIDENCE OF RECORD**

Regarding the medical opinions of Dr. Hester and Dr. Bartholomew, the ALJ stated:

> Dr. Hester reported in January 2002 and July 2003 that the
> claimant could not perform work activities on a full time basis
> (Exhibit 3F).  These assessments are not given significant weight
> as they appear to be based solely on claimant's self-report of his
> limitations.  Furthermore, subsequent medical evidence including
> objective reports and statements from other doctors do not support
> these limitations.
>
> Dr. Bartholomew expressed the opinion that findings and x-rays in
> no way supported a claim for total disability (Exhibit 5F).  This
> statement is given significant weight in that it is consistent with the
> other substantial evidence in the file.

TR. 32.

Plaintiff argues that the ALJ erred in giving greater weight to Dr. Bartholomew's opinion

than to the weight accorded to Dr. Hester's opinion, because Dr. Hester examined Plaintiff more

frequently and more thoroughly than did Dr. Bartholomew, who allegedly examined Plaintiff

"under [hostile] conditions and spent at the max of 15 minutes with him."  Docket No. 26.

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical
> opinion we receive.  Unless we give a treating source's
> opinion controlling weight under paragraph (d)(2) of this section, we
> consider all of the following factors in deciding the weight we give
> to any medical opinion.
> (1)  Examining relationship.  Generally, we give more
> weight to the opinion of a source who has examined you than to
> the opinion of a source who has not examined you.
> (2) Treatment relationship.  Generally, we give more
> weight to opinions from your treating sources, since these sources
> are likely to be the medical professionals most able to provide a
> detailed, longitudinal picture of your medical impairment(s) and
> may bring a unique perspective to the medical evidence that cannot

be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Hester treated Plaintiff for a considerable period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions, as long as his opinion was

consistent with, and supported by, the objective evidence of record. As was noted by the ALJ, however, Dr. Hester's opinion appeared to be based upon Plaintiff's subjective complaints and was not supported by the evidence of record. TR 32.

The Regulations do not require an ALJ to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions of physicians are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). Because the ALJ found Dr. Bartholomew's opinion to be consistent with the other substantial evidence in the record, and found Dr. Hester's opinion to be unsupported by the evidence of record and based on Plaintiff's subjective complaints, the ALJ properly accorded Dr. Bartholomew's opinion greater weight.

## 4. ALJ's EVALUATION OF PLAINTIFF'S ABILITY TO PERFORM PAST RELEVANT WORK

As provided in her sixth finding, the ALJ concluded that Plaintiff is "capable of performing past relevant work as an office machine servicer and parts cataloger." TR 34. Plaintiff asserts that he previously worked as a "large system engineer" which is not synonymous with the job requirements for an office machine server. Docket No. 26. Plaintiff also states that he previously worked on a temporary assignment "consolidat[ing] some part numbers from an old way of doing things to a new way" which "consisted of copying numbers from one system to another." *Id.* Plaintiff contends that this experience was erroneously labeled on his resume (which was prepared for him by another person), which misled the VE to identify the job of parts

cataloger as among his past relevant work. *Id.* Plaintiff maintains that the temporary work described above is inconsistent with the job description of a parts cataloger, and, therefore, that he has never actually worked as a parts cataloger. *Id.*

This statement of error is closely related to Defendant's position concerning the ALJ's adherence to AR 98-3(6). Accordingly, it will be analyzed in Statement of Error 6, below.

## 5. ALJ's APPLICATION OF ACQUIESCENCE RULING 98-4(6)

Defendant argues that the ALJ acknowledged the applicability of AR 98-4(6), but failed to apply that ruling to the instant case. Docket No. 34. Defendant states that the ALJ "found 'no intervening event, diagnosis, or objective documented worsening of existing conditions to establish changed condition,'" but did not include the need to alternate sitting and standing in Plaintiff's residual functional capacity. *Id.* Defendant contends that "such an omission is significant" because a limitation requiring the need to alternate sitting and standing would likely affect the outcome of Plaintiff's ability to perform past relevant work as an office machine servicer or a parts cataloger. *Id.*

AR 98-4(6) is derived from *Drummond v. Commissioner*, 126 F.3d 837, 840-43 (6th Cir. 1997), in which the court held that, absent evidence of medical improvement, res judicata required a finding that a claimant, previously denied benefits as a younger worker capable of sedentary work, was still limited to sedentary work. The court stated:

> Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. We reject the Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence. To allow the Commissioner such freedom would contravene the reasoning behind 42 U.S.C. § 405(h) which requires finality in the decisions of social security claimants. Just as a social security

18

claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner.

*Id.* at 842.

AR 98-4(6) provides the following "Explanation of How SSA Will Apply The

*Drummond* Decision Within The Circuit":

> [This Ruling] applies only to a finding of a claimant's residual functional capacity or other finding required at a step in the sequential evaluation process for determining disability provided under 20 CFR 404.1520, 416.920 or 416.924, as appropriate, which was made in a final decision by an ALJ or the Appeals Council on a prior disability claim.
>
> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

Regarding Plaintiff's initial application for DIB, ALJ Cherry issued an unfavorable

decision. His fourth finding stated, "The claimant retains the capacity to perform light work,

with lifting of up to 20 pounds, which allows for alternate sitting and standing." TR 665. That

decision was rendered final after the Appeals Council denied to review the case. TR 60.

Plaintiff again filed for DIB and also for SSI, and, upon remand from the Appeals Council, ALJ

Roberts was instructed to apply AR 98-4(6). TR 291, 660, 683. ALJ Roberts acknowledged that

she was bound by ALJ Cherry's previous decision, pursuant to AR 98-4(6) and concluded that

"there is no intervening event, diagnosis, or objective documented worsening of existing

conditions to establish changed condition." TR 26-27.

Having found that Plaintiff's condition had not changed, ALJ Roberts was thus bound by ALJ Cherry's residual functional capacity determination. While ALJ Roberts adopted the finding that Plaintiff could perform light work, she failed to include Plaintiff's need to alternate sitting and standing. TR 28. Because the ALJ failed to include this limitation in her residual functional capacity finding, she did not comply with AR 98-4(6).

## 6. ALJ's APPLICATION OF ACQUIESCENCE RULING 98-3(6)

Defendant also argues that the ALJ acknowledged the applicability of AR 98-3(6) but failed to apply that ruling to the instant case. Docket No. 34. Defendant states that, "[T]he current ALJ did not attempt to resolve the Appeals Council's concern about the differences in skills and exertion levels testified to by the previous VEs regarding [P]laintiff's past relevant work." *Id.*[7]

AR 98-3(6) is derived from *Dennard v. Secretary of H.H.S.*, 907 F.2d 598, 600 (6th Cir. 1990). The *Dennard* court held that collateral estoppel precluded the Secretary from finding that a claimant's past relevant work required only light exertion where, in connection with a prior application, the Secretary had categorized the same past relevant work as requiring heavy exertion. The court stated that the ALJs involved in the claimant's second application had improperly "reconsidered the nature and extent of [the claimant's] exertional level in his former job as a resident care aide supervisor." *Id.* Those ALJs, however, could not properly find that the claimant could perform his past relevant work, when the previous ALJ had determined that the claimant could not perform his past relevant work. *Id.*

_____

[7]As noted in Statement of Error #4, Plaintiff's argument regarding the ALJ's classification of his past relevant work relates directly to the applicability of AR 98-3(6).

AR 98-3(6) provides the following "Explanation of How SSA Will Apply The *Dennard* Decision Within The Circuit":

> [This Ruling] applies to a finding of the demands of a claimant's past relevant work, under 20 CFR 404.1520(e) or 416.920(e), which was made in a final decision by an ALJ or the Appeals Council on a prior disability claim. . . .
>
> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

At the hearing for Plaintiff's first application, the VE described Plaintiff's past relevant work as that of computer technician, classified as light work, and field service equipment repairman, classified as heavy work. TR 664. The VE testified that Plaintiff could not perform his past relevant work given the residual functional capacity provided, but some of Plaintiff's computer skills would be transferable to other jobs at lesser exertional levels. TR 664, 665. Accordingly, in his fourth finding, ALJ Cherry concluded that, "The claimant cannot perform his past relevant work as a computer technician or field service equipment repairman." TR 665. Because Plaintiff could perform other skilled and unskilled work available in the local and national economies, however, ALJ Cherry found Plaintiff not to be disabled. *Id.*

At the first hearing for Plaintiff's second set of applications, the VE described Plaintiff's past relevant work, *i.e.*, the work that ALJ Cherry had categorized as "computer technician," as that of computer support supervisor, computer systems hardware analyst, and computer support analyst, all of which were classified as skilled and sedentary work. TR 680, 836. The VE

testified that Plaintiff did not have any transferable vocational skills, but he could perform his past relevant work given the residual functional capacity and limitations provided. TR 680, 836-37. Therefore, in her sixth finding, ALJ Graves concluded that, "The claimant is capable of performing past relevant work as a computer support supervisor, computer systems hardware analyst, and a computer support analyst. . . ." TR 680. Accordingly, ALJ Graves found Plaintiff not to be disabled. TR 681.

Although ALJ Graves acknowledged the applicability of AR 98-3(6), she did not apply the ruling, and the Appeals Council remanded the case, requiring the ALJ, *inter alia*, to "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's ability to perform past relevant work and on his remaining occupational base . . . and to determine whether the claimant has acquired any skills that are transferable to other occupations . . . ." TR 672, 681, 684. The Appeals Council reasoned:

> The vocational expert at this hearing . . . identified the claimant's past relevant work with different exertional level and transferability of skills than those identified by the vocational expert at the prior hearing . . . . The hearing decision does not identify evidence, as required by Acquiescence Ruling 98-3(6), which shows that the previous vocational expert's testimony was based on incomplete or incorrect data.

TR 684.

At the remand hearing, the VE described Plaintiff's past relevant work as that of: (1) office machine server, classified as skilled and light work; (2) electronics technician, classified as skilled and medium work; and (3) parts cataloger, classified as skilled and sedentary. TR 34, 866-67. The VE testified that Plaintiff could perform his past relevant work as an office machine server and as a parts cataloger given the residual functional capacity and

limitations provided.  TR 34, 867-68.  Therefore, in her sixth finding, ALJ Roberts concluded that, "The claimant is capable of performing past relevant work as an office machine servicer and parts cataloger. . . ." TR 34.  Accordingly, ALJ Roberts found Plaintiff not to be disabled. *Id.*

As noted above, under AR 98-3(6), the doctrine of collateral estoppel precludes an ALJ from reconsidering the issue of a plaintiff's ability to perform his past relevant work when a prior determination has already been made in a final decision for a previous application, and there is no evidence that incomplete or incorrect data was used in the prior determination.  In connection with Plaintiff's first application for DIB, ALJ Cherry made a determination of the classification and exertional levels of Plaintiff's past relevant work, and ALJ Cherry concluded that Plaintiff was unable to perform that work based upon Plaintiff's residual functional capacity. In the instant case, Plaintiff's work history has not changed since his first application, and no evidence was provided to show that Plaintiff's past relevant work was improperly determined for Plaintiff's first application.  Thus, ALJ Roberts was bound by the ALJ Cherry's previous determination regarding the classification and exertional levels of Plaintiff's past relevant work, as well as Plaintiff's inability to return to that work.  Because ALJ Roberts found Plaintiff able to perform his past relevant work despite ALJ Cherry's determination that Plaintiff could not perform this work and because ALJ Roberts improperly "reconsidered the nature and extent" of the exertional levels of Plaintiff's past jobs, ALJ Roberts did not comply with AR 98-3(6).

## V.  RECOMMENDATION

Because essential issues of fact have not been resolved, remand, not reversal, is the

appropriate course of action at this juncture. For the reasons discussed above, the undersigned recommends that this action be REMANDED.

The undersigned also recommends that: (1) the record should be further developed to determine whether Plaintiff is able to perform substantial gainful activity given ALJ Cherry's determination of Plaintiff's residual functional capacity and his determination that Plaintiff is unable to perform his past relevant work; and (2) upon remand, the record should again be evaluated to determine whether there is evidence that Plaintiff's condition has changed. If it has not, then AR 98-4(6) and AR 98-3(6) must be followed. If it has changed, then it should be determined whether Plaintiff is entitled to benefits under the Regulations given the nature and severity of his current impairments and limitations.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge